DeAnne Casperson, Esq. (ISB No. 6698)
dcasperson@holdenlegal.com
Amanda E. Ulrich, Esq. (ISB No. 7986)
aulrich@holdenlegal.com
HOLDEN, KIDWELL, HAHN & CRAPO, P.L.L.C.
P.O. Box 50130
1000 Riverwalk Drive, Suite 200
Idaho Falls, ID 83405
Telephone: (208) 523-0620
Facsimile: (208) 523-9518

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| NATHAN REIDLE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>MAVERIK, INC., a Utah corporation,<br><br>　　　　　Defendant. | Case No.<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL**<br><br>Filing Fee: $400.00 |

Plaintiff Nathan Reidle, by and through his counsel of record Holden, Kidwell, Hahn & Crapo, P.L.L.C. and as a cause of action against Defendant Maverik, Inc., alleges and complains as follows:

**JURISDICTION AND VENUE**

1.  This is an action brought under the Title VII of the Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, *et seq*.

2.  This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 1343, and 1367; and 42 U.S.C. § 2000e-5.

1 - COMPLAINT AND DEMAND FOR JURY TRIAL

3. Venue in this action properly lies in the United States District Court for the District of Idaho, Eastern Division, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this judicial district.

## PARTIES

4. Plaintiff Nathan Reidle ("Reidle") is a male citizen and a resident of the United States of America, who resides in Shelley, Idaho.

5. Defendant Maverik, Inc. ("Defendant" or "Maverik") is a Utah corporation which operates over 270 locations throughout the western states, including five locations in the Idaho Falls, Idaho area.

6. At all times material to this Complaint, Defendant regularly employed fifteen or more persons, and was engaged in an industry affecting commerce, bringing Defendant within the ambit of 42 U.S.C. § 2000e, *et seq*.

## FACTS COMMON TO ALL COUNTS

7. Reidle realleges and incorporates by reference paragraphs 1 through 6 above, as though fully incorporated herein.

8. On or about November 5, 2015, Reidle began working as a cashier for Defendant at Store #396.

9. Reidle is a gay male. His managers as well as most of his coworkers at Maverik were aware that he is gay.

10. A few weeks after Reidle began working at Store #396, Reidle and other employees became aware that Store Manager Crystal Hill Armstrong's ("Armstrong") daughter needed surgery. As a kind gesture, Reidle and his fellow employees discussed the possibility of setting up some kind of fundraiser for Armstrong's daughter. One employee suggested a "Go Fund Me" account. After discussing this idea with Operations Manager Maggie Ivarra ("Ivarra"),

who gave Reidle some guidelines, Reidle set up the account per the guidelines provided by Ivarra.

11. Reidle and his coworkers all contributed toward other gifts for Armstrong.

12. On or about December 18, 2015, Regional Manager Maria Webster ("Webster") called Reidle into a meeting where Armstrong was present. Webster informed Reidle that Armstrong was highly offended by the "Go Fund Me" page he had established, and accused Reidle of setting up the page after being told not to by Ivarra.

13. Reidle explained that Ivarra had actually encouraged him to set up the page. Webster then informed Reidle that he had taken his professionalism too far, and that the situation looked bad because Reidle was a male employee and his manager was a female employee "despite [Reidle's] sexual orientation."

14. Webster also required Reidle to read and sign the Maverik Harassment Policy.

15. Webster then told Reidle that a transfer to a different store was approved and told Reidle "if you want a job, you'll accept the transfer." Webster stated Reidle would still get 40 hours per week at the new store. Webster stated the transfer had been approved by Human resources Director Ashely Ray ("Ray").

16. Reidle was forced to transfer to Store #185 in order to keep his employment. No other employee was targeted or disciplined for contributing money or pitching in for gifts for Armstrong.

17. When Reidle started work at Store #185, Store Manager Timothy Buck Wolfe ("Wolfe") stated to Reidle, "I don't care if you are gay or whatever, but I am not going to put up with any drama."

18. On or about December 22, 2015, while working at Store #185, Wolfe and employee Dimitri Gustaves ("Gustaves") were engaging in horseplay, snapping each other with wet cleaning towels, chasing each other around the store, and talking inappropriately and loudly. Wolfe grabbed a light saber toy and commented to Gustaves that he was going to shove it down Gustaves "pee hole" and make a glow worm out of his penis. Wolfe and Gustaves engaged in these actions in front of a customer. Reidle shook his head and commented, "Wow."

19. On or about December 24, 2015, Reidle noticed his schedule for the time period of December 26th to December 29th, 2015, had been changed, so that he had one less hour on each of his scheduled shifts. No other employees' hours had been reduced. Reidle asked Wolfe why his hours, and no other employees' hours, had been cut. Wolfe replied, "Hours shortage," and provided no further explanation.

20. On or about December 27, 2015, Reidle noticed while verifying his hours that his time card showed that he had "unpaid hours." Reidle took a picture of his time card and sent it to Wolfe, asking him if he would look into the time card issue the next day (Monday), when Wolfe was back in the store and explain the unpaid hours to Reidle. In response, Wolfe texted, "Dude chill. The time is correct up til Friday. From now on, unless it's a true EMERGENCY, I want you to leave a note. End of story. I get 2 days off & it's only fair that I don't get bothered with petty shit that I can fix during the week."

21. Even though Reidle had not asked Wolfe to address the issue until he was back at work on Monday, Reidle apologized, stating, "OK, I will double check tonight & leave a note, sorry I just want to make sure my time is correct, thanks!"

22. On or about December 29, 2015, Reidle witnessed Wolfe grab onto and try to kiss employee Sunny Inglestrom ("Inglestrom") in the bakery while Reidle was working his shift. After

4 - COMPLAINT AND DEMAND FOR JURY TRIAL

witnessing this incident of completely inappropriate and sexually charged behavior by Wolfe, as well as observing Wolfe' prior behavior, Reidle sent a text to Webster, asking her to contact him when she was off vacation due to unprofessional behavior in the store. He mentioned to Webster that he was going to let corporate know, and also asked if he would be able to transfer to another store.

23. Webster replied back, asking, "what's going on, call me." However, Reidle was in the middle of his shift, and stated, "I am at work can't right now, just took a break to let you know."

24. Reidle called Webster the next day, December 30, 2015, but she did not answer and she did not return his call.

25. Reidle wanted to speak to Webster prior to reporting it to corporate. Reidle also had family in town for the holidays and was off work to spend time with then.

26. On or about December 31, 2015, Wolfe texted Reidle and directed him to come to the store. When Reidle arrived at the store, Wolfe told Reidle that, per Ray, Reidle was terminated due to violating the Harassment Policy he signed before he was transferred to Store #185.

27. Reidle asked Wolfe how he could have possibly violated the Harassment Policy. Wolfe responded that several employees had informed him that Reidle had made comments toward them. Reidle asked for specific comments. Wolfe said, "I don't know. There's too many to count." Then Wolfe stated one comment that came to mind, claiming Reidle told a female employee, "You're the one with the pretty eyes that I am taking home tonight."

28. Reidle had never made any such comment, or any comment even remotely similar, to any coworker at any time. The reasons stated by Wolfe for Reidle's termination were false.

29. Reidle called Defendant's corporate office after he was terminated and explained that he had complained about and report misconduct and unprofessional behavior in the work environment, but was then terminated before he was able to provide further specifics because the District Manager to whom he reported the conduct would not call him back. He further reported that his termination was based upon false allegations of violation of the Harassment Policy. To Reidle's knowledge, nothing was done to follow up on his report, and Reifle was never offered reinstatement.

30. On or about January 8, 2016, Reidle dually filed a Charge of Discrimination with the Idaho Human Rights Commission ("IHRC") and the Equal Employment Opportunity Commission ("EEOC").

31. Reidle received a Notice of Right to Sue letter on or about March 31, 2017. Reidle has exhausted his administrative remedies against Defendant.

## COUNT ONE
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
**(Gender Discrimination)**

32. Reidle realleges and incorporates by reference paragraphs 1 through 31 above, as though fully incorporated herein.

33. Reidle is a gay man. Because of his sexual orientation, Reidle does not conform to stereotypical male characteristics. Consequently, Reidle belongs to a protected class under Title VII of the Civil Rights Act of 1964.

34. Reidle at all times performed his job satisfactorily.

35. Reidle suffered adverse employment actions when management:

    a.   Forced Reidle to transfer to another store;

    b.   Reduced his hours; and

      c.      Terminated Reidle's employment.

36. Reidle was targeted for disciplinary action and subjected to multiple adverse actions taken against him, including being terminated, due to the fact that Reidle did not conform to stereotypical male characteristics.

37. Reidle was treated differently than similarly-situated employees outside of his protected class.

38. Defendant violated Title VII of the Civil Rights Act of 1964, as amended, by discriminating against Reidle on the basis of sex.

39. As a direct and proximate result of Defendant's actions and/or failure to act, Reidle has suffered and will continue to suffer emotional distress consisting of outrage, shock and humiliation, due to the sex discrimination he experienced. Further, Reidle suffered and will continue to suffer loss of earnings and other employment benefits and job-related opportunities. Reidle is therefore entitled to general and compensatory damages, such amount to bet determined at trial, as well as any other equitable remedies available to him.

40. Defendant's conduct was malicious and oppressive, and done with reckless disregard for Reidle's federally protected rights, for which Reidle is entitled to punitive damages.

## COUNT TWO
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT
**(Retaliation)**

41. Reidle realleges and incorporates by reference paragraphs 1 through 40 above, as though fully set forth herein.

42. Reidle engaged in an activity protected by federal law by objecting to the discriminatory work environment permitted to occur by Defendant and reporting the discriminatory environment.

43. Defendant subjected Reidle to an adverse employment action by reducing his hours when he objected to the discriminatory work environment and terminating him after he reported additional discriminatory conduct engaged in by Wolfe to Webster.

44. Such adverse employment actions constitute retaliation against Reidle for objecting to and reporting discrimination permitted to occur by Defendant.

45. As a direct and proximate result of Defendant's actions and/or failure to act, Reidle has suffered and will continue to suffer emotional distress consisting of outrage, shock, and humiliation, based upon the retaliation he experienced.  Further, Reidle has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Reidle is thereby entitled to general and compensatory damages, such amount to be proven at trial, as well as any other equitable remedies available to him.

46. Defendant's conduct was malicious and oppressive, and done with a reckless disregard for Reidle's federally protected rights, for which Reidle is entitled to punitive damages.

### ATTORNEY'S FEES

47. As a further direct and proximate result of the Defendant's actions and/or failures to act, Reidle has been compelled to retain the services of counsel, and has thereby incurred and will continue to incur costs and attorney's fees which should be required to be paid by Defendant pursuant to 42 U.S.C. § 2000e-5(k), *et seq.*

### DEMAND FOR JURY TRIAL

Reidle demands trial by jury as to all issues triable to a jury in this action.

### PRAYER FOR RELIEF

WHEREFORE, Reidle seeks judgment against the Defendant as follows:

1. For compensatory and general damages as well as statutorily available damages in an amount as shall be proven at trial, and any available equitable remedies;

2. For punitive damages;

3. For attorney's fees pursuant to statute and costs of suit; and

4. For such other and further relief as the Court deems just and proper.

Dated this 28th day of June, 2017.

/s/
DeAnne Casperson
Holden, Kidwell, Hahn & Crapo, P.L.L.C.

G:\WPDATA\DC\19558 Reidle\Pleadings\Complaint.wpd:dg